UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EQUAL EMPLOYMENT OPPORTUNITY         **REPORT AND**
COMMISSION,         **RECOMMENDATION**

            Applicant,         11-mc-00028-(A)(M)

v.

STERLING JEWELERS INC.,

            Respondent.
_____

## INTRODUCTION

Petitioner Equal Employment Opportunity Commission ("EEOC") filed an application for order to show cause why its administrative subpoena *duces tecum*, #NY-A10-006, to Sterling Jewelers Inc. ("Sterling") should not be enforced [1].[1] This motion, being dispositive, has been referred to me by Hon. Richard J. Arcara for report and recommendation [19].[2] Oral argument was held on May 17, 2011. For the following reasons, I recommend that the subpoena be enforced in its entirety.

---

    [1]     Bracketed references are to the CM/ECF docket entries.

    [2]     "A motion to enforce a subpoena is not always considered a dispositive motion for purposes of Federal Rule of Civil Procedure 72 . . . . Because the Magistrate's order would dispose of the entire matter at issue in this case, however, the order is more properly treated as a Report and Recommendation, subject to de novo review." U.S. E.E.O.C. v. Dolgencorp., 2008 WL 4542973, *2 (N.D.Ill. 2008). *See* E.E.O.C. v. Schwan's Home Service, 707 F.Supp.2d 980, 989 (D.Minn. 2010)(same).

## BACKGROUND

A.   **The Thielker Charge**

On August 6, 2008, Diane Thielker, a former employee of Sterling (d/b/a Jared the Galleria of Jewelry), filed a charge of discrimination (the "Thielker Charge") alleging:

> "I believe that I have been the victim of unlawful discrimination in employment because of my age . . . , in violation of the Age Discrimination in Employment Act of 1967 . . . and because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964. . . because:
>
> A. I applied for the timepiece manager position in January 2008 and I was rejected. Instead a 23 year old male, who did not even apply was hired.
>
> B. I believe that when I told [the General Manager] that I believed this was age and sex discrimination, he retaliated by saying I did not meet standards and by terminating me." Thompson Declaration [3], Exs. 1 (Charge No. 523-2008-00926) and 4.

As part of its investigation into the Thielker Charge, on October 9, 2009 Ms. Thielker provided the EEOC with a copy of an August 3, 2007 Employee Counseling Report issued by Sterling to Ms. Thielker. The Counseling Report states that "[a]ny discussion regarding payroll need only to be made between said employee and mgr. Having inappropriate discussions only contribute to and fosters ill will amongst team members as well as *being a direct violation of Sterlings [sic] code of conduct*." Thompson Declaration [3], Ex. 10 (emphasis added). Included in the Counseling Report are Ms. Thielker's comments that "I feel I'm being discriminated against being a woman in this company where men always make more money than women". Id.

On January 20, 2010 the EEOC served the subpoena, which requests the following information from January 1, 2005 through present:

1. The Code of Conduct referred to in the Counseling Report "and any other policies prohibiting employees from discussing their pay";

2. "[A]ll disciplinary or warning notices, counseling reports, or similar documents reflecting Sterling's enforcement of its policy prohibiting employees from discussing their pay"; and

3. [D]ocuments that evidence or explain . . . all individuals disciplined under Sterling's policy prohibiting employees from discussing their pay". Thompson Declaration [3], Ex. 13.[3]

Sterling's petition to the EEOC to revoke or modify the subpoena was denied by the EEOC on June 29, 2010. Thompson Declaration [3], Exs. 14, 15. Thereafter, the EEOC sought compliance with the subpoena by August 11, 2010, but Sterling advised that it would not comply. Id., Exs. 16-17.

**B.     The Primary Action**

On September 23, 2008 the EEOC filed EEOC v. Sterling Jewelers Inc., 08-cv-0706(A)(M) (the "Primary Action") in this Court alleging gender discrimination pursuant to Sections 706 and 707 of Title VII of the Civil Rights Act of 1964, as amended. The complaint alleges that "since at least January 1, 2003, Sterling has engaged in unlawful employment practices throughout its stores nationwide . . . by maintaining a system for making promotion and compensation decisions that is excessively subjective and through which Sterling has permitted or encouraged managers to deny female employees equal access to promotion opportunities and

---

[3]   An earlier subpoena was revoked by the EEOC due to an error in service. Thompson Declaration [3], ¶25.

the same compensation paid to similarly situated male employees" ([1], ¶7(a)), and by "maintain[ing] a system for making promotion and compensation decisions that is excessively subjective and that has a disparate impact on female retail sales employees". Id., ¶8(a).

C.   **The Arbitration**

Current and former female Sterling employees commenced a class action lawsuit alleging that Sterling discriminated against them in pay and promotion on the basis of their gender (the "arbitration claimants"). See Jock v. Sterling Jewelers Inc., 08-cv2875 (S.D.N.Y.). The Court granted plaintiffs' motion to refer the dispute to arbitration and to stay the litigation pending conclusion of that arbitration. See Jock v. Sterling Jewelers, Inc., 564 F.Supp.2d 307, 311 (S.D.N.Y.2008). The Second Circuit recently held that the arbitrator did not exceed her authority in determining that the arbitration claimants could proceed with their efforts to certify a class in the arbitration proceeding. See Jock v. Sterling Jewelers Inc., 646 F.3d 113, 127 (2d Cir. 2011).

This action ensued on April 15, 2011 and Sterling has opposed the EEOC's application, arguing that it constitutes an improper attempt to circumvent the discovery process in the Primary Action, that the information sought in the subpoena is irrelevant to the Thielker Charge, overbroad and unduly burdensome, and that the subpoena is barred by the parties' mediation agreement. Sterling's Memorandum of Law [17]. Despite its opposition to the subpoena, Sterling states that it has no company policy that prohibits employees from discussing their pay with co-workers, which moots those aspects of the subpoena requesting this policy. Lynch Declaration [17-2], ¶¶7-9.

## ANALYSIS

"[T]he district court's 'role in a proceeding to enforce an administrative subpoena is extremely limited.'" E.E.O.C. v. United Parcel Service, Inc., 587 F.3d 136, 139 (2d Cir. 2009). "To obtain enforcement of an administrative subpoena, '[a]n agency must show only [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within [the agency's] possession, and [4] that the administrative steps required . . . have been followed.'" Id. "A subpoena that satisfies these criteria will be enforced unless the party opposing enforcement demonstrates that the subpoena is unreasonable or that compliance would be 'unnecessarily burdensome.'" Id. Sterling's challenge to the subpoena centers solely on the first and second prongs.

**A.      Is the Subpoena being Issued for a Legitimate Purpose?**

Sterling argues that the subpoena is being issued to end-run the discovery process in the Primary Action. Sterling's Memorandum of Law [17], Point I. However, commencement of the Primary Action is not a *per se* bar to the EEOC's authority to investigate the Thielker Charge. See E.E.O.C. v. Von Maur, Inc., 2007 WL 3503435, *4 (S.D.Iowa 2007) ("[T]o hold that the class action and Mr. Smith's intervention deprive the EEOC of authority to continue to investigate suspected systemic discrimination similar to that alleged in Mr. Smith's charge would be inconsistent with the expansive investigative authority conferred on the EEOC by Title VII and without clear textual support in the statute").

Although the timing of the EEOC's actions with respect to the subpoena are curious when compared to the progress of discovery in the Primary Action, "[o]rdinarily the EEOC [has] the prerogative to decide at what pace and how vigorously to pursue a given investigation." E.E.O.C. v. Bashas', Inc., 2009 WL 3241763, *12 (D.Ariz. 2009). Sterling also argues that the scope of the subpoena, which seeks company-wide information relevant to the EEOC's pattern or practice claims in the Primary Action, evidences that it is being issued for an ulterior purpose. Sterling's Memorandum of Law [17], p. 9. However, the Counseling Report states that Ms. Thielker was disciplined under "Sterlings [*sic*] code of conduct" prohibiting employees from discussing their pay and that Ms. Thielker believed that women working for Sterling make less than their male counterparts, thereby evidencing a company-wide policy. "An employer's nationwide use of a practice under investigation supports a subpoena for nationwide data on that practice." E.E.O.C. v. Kronos Inc., 620 F.3d 287, 298 (3d Cir. 2010) (*citing* United Parcel Service. Inc., 587 F.3d at 139)).

Moreover, the cases upon which Sterling relies are readily distinguishable. For example, in United States v. Giant Industries, Inc., 1981 WL 1277,*2 (D.Ariz. 1981), the administrative agency's subpoena was intended to further a *criminal* proceeding. Sterling's Memorandum of Law [17], p. 6. Sterling also relies on Bashas', Inc., where the respondent made a sufficient preliminary showing entitling it to conduct limited discovery into the EEOC's purpose for issuing the subpoena. Sterling's Memorandum of Law [17], p.7. However, here, Sterling "does not seek limited discovery at this juncture." Sterling's Memorandum of Law [17], p. 7 n. 3.

Therefore, I conclude that the EEOC has met its burden of establishing that the subpoena was issued for a legitimate purpose.

**B.     Does the Subpoena Request Relevant Information?**

"In connection with any investigation of a charge . . . , the Commission . . . shall at all reasonable times have access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42 U.S.C.A. §2000e-8.  The "limitation on the Commission's investigative authority is not especially constraining. . . . [C]ourts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer. E.E.O.C. v. Shell Oil Co., 466 U.S. 54, 68-69 (1984).  Nevertheless, "[w]hile the notions of relevancy in an EEOC investigation are broad, they are not limitless." E.E.O.C. v. Local 32B-32J, Service Employees International Union, AFL-CIO, 1992 WL 84474, *2 (S.D.N.Y. 1992).  See Shell Oil Co., 466 U.S. at 69 ("Congress did not eliminate the relevance requirement, and we must be careful not to construe the regulation adopted by the EEOC governing what goes into a charge in a fashion that renders that requirement a nullity").

"The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom . . . .  The charge merely provides the EEOC with 'a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices;' and that investigation may well 'disclose, as in this instance, illegal practices other than those listed in the charge'". E.E.O.C.  v. General Electric Co., 532 F.2d 359, 364 (4th Cir. 1976).  See E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 746 (1st Cir. 1996)("The allegations contained in the charge do not narrowly circumscribe the Commission's investigation.  Rather, the charge serves as 'a jurisdictional springboard' enabling the Commission 'to investigate whether

the employer is engaged in any discriminatory practices.' . . . So viewed, the charge is capable of supporting an EEOC investigation into both the discrimination described in the charge itself and into the surrounding circumstances (including a full probing of any evidence of discriminatory practices unearthed during the course of the initial investigation)").

From its investigation of the Thielker Charge, the EEOC learned of the Counseling Report, which alleges that Sterling has a company-wide policy of paying women less than men and of prohibiting employees from discussing their pay with each other. Therefore, I conclude that the subpoena seeks information relevant to the Thielker Charge, which was learned directly through the EEOC's investigation of the Charge. See E.E.O.C. v. Konica Minolta Business Solutions U.S.A., Inc., __F.3d__ , 2011 WL 1602064, *3 (7th Cir. 2011)(although the charge did not allege that "Konica had refused to hire him, but that does not make hiring data irrelevant. The question . . . is not whether Thompson specifically alleged discrimination in hiring, but instead is whether information regarding Konica's hiring practices will 'cast light' on Thompson's race discrimination complaint"); Schwan's Home Service, 707 F.Supp.2d at 995("Courts have routinely authorized enforcement of administrative subpoenas that request information that goes beyond information directly tied to the charging party's personal experiences and circumstances").[4]

Sterling's representation that it has no company policy prohibiting employees from discussing their pay, which is in direct contravention to the statements in the Counseling Report,

---

[4] *Compare with* E.E.O.C. v. Southern Farm Bureau Casualty Insurance Co., 2000 WL 1610617, *4 (E.D.La. 2000), aff'd, 271 F.3d 209 (5th Cir. 2001) (where the EEOC sought to expand its investigation of a raced based charge into an investigation of gender discrimination, the court held that the "EEOC cannot judicially enforce a subpoena seeking information irrelevant to that charge by merely asserting that it has expanded its investigation into other matters").

only highlights the relevancy of the information sought in the subpoena to the EEOC's investigation of the Thielker Charge.  Nevertheless, even without the Counseling Report, Sterling's nationwide policies are relevant to Ms. Thielker's individual charge.  See Schwan's Home Service, 707 F.Supp.2d at 995 (holding that "even if the original [non-class action] charge were to govern the Court's relevance inquiry, the information [related to nationwide practices] the EEOC seeks in   the . . . Subpoena would be relevant").[5]

       Therefore, I conclude that the EEOC has met its burden of establishing that the information sought is relevant.


**C.**      **Would Compliance with the Subpoena Place an Undue Burden on Sterling?**

       "[A] court may modify or exclude portions of a subpoena only if the employer 'carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad'" by demonstrating that "'compliance would threaten the normal operation of a respondent's business.'" E.E.O.C. v. United Air Lines, Inc., 287 F.3d 643, 653 (7th Cir. 2002). See E.E.O.C. v. Morgan Stanley & Co., Inc., 132 F.Supp.2d 146, 161 (S.D.N.Y. 2000) ("In assessing the burdensomeness of a subpoena the Court must show 'that the cost of gathering this information is unduly burdensome in light of the company's normal operating costs'"); E.E.O.C. v. Pan American World Airways, 1983 WL 482, *4  (S.D.N.Y. 1983).

---

     [5]     *Compare with* Joslin Dry Goods Co. v. E.E.O.C., 483 F.2d 178, 184 (10th Cir. 1973)("It was not shown that there were any hiring or firing practices and procedures applicable to all of the stores. This being so, the decision of the district court limiting the demand of EEOC to the Downtown Denver store is affirmed").

In support of this showing, Sterling asserts that compliance with the subpoena would necessitate it having to review each file of the approximately 54,000 individual employees it has employed in retail sales positions since January 1, 2005. Lynch Declaration [17-2], ¶¶10-13. According to Sterling, this review would require "thousands of staff or temporary assistance in hours" and "would seriously disrupt the operations of Sterling's Human Resources Department". Id., ¶¶14-18.

Although Sterling has done more than simply assert in conclusory fashion that compliance would be burdensome,[6] I do not find that it has met its "difficult burden" of establishing that compliance with the subpoena would threaten its normal business operations. It is difficult to understand how the subpoena, which seeks information related to Sterling's alleged policy of prohibiting employees from discussing their pay, would impose an undue burden on Sterling when they state that they have no such policy.

In any event, Sterling offers no concrete cost estimate associated with complying with the subpoena, nor does it allege that compliance would disrupt any department other than Human Resources. As argued by the EEOC ([21], p. 6 n.4), Sterling's estimate that it would have to review 54,000 personnel files to comply with the subpoena also appears inflated. Sterling maintains computerized records that would allow it to determine which employees received counseling. Lynch Declaration [17-2], ¶11. Extracting from its review those employees that have

---

[6] *Compare with* E.E.O.C. v. Sunoco, Inc. (R & M), 2009 WL 197555, *6 (E.D.Pa. 2009)(respondent failed to meet its burden where it "summarily asserts that the documents it would have to collect and produce would be 'inordinate[ly]' and 'significant[ly]' cost- and time-intensive").

not received counseling would reduce the number of personnel files Sterling would have to manually review.

**D.     Does the Mediation Agreement Bar the Subpoena?**

Prior to the litigation commenced by the EEOC and the arbitration claimants, the parties agreed to engage in private mediation concerning the charges brought by 19 women other than Ms. Thielker, which resulted in a Mediation and Confidentiality Agreement ("Mediation Agreement") dated January 22, 2007. Thompson Declaration [3], Ex. 3. The EEOC, Sterling and arbitration claimants (by their counsel Cohen Milstein Sellers & Toll PLLC) were parties to the Mediation Agreement. Id. The unsuccessful mediation concluded on February 26, 2008. EEOC's Memorandum of Law [2], Point IV.

Under the Mediation Agreement, the parties agreed that "in the event that counsel for Charging Parties have other clients that file charges of discrimination with the EEOC . . . arising in whole or in part out of the same or substantially the same set of circumstances, such Other Clients shall be considered Charging Parties for purposes of this Agreement." Thompson Declaration [3], Ex. 3, Preamble. The parties also agreed that "Sterling shall be under no obligation to provide additional information or documentation relating to the Charges." Id., Fourth Addendum, ¶8.

Relying on these provisions, Sterling argues that Ms. Thielker is a Charging Party under the Mediation Agreement because she is represented by the firm representing the arbitration claimants (although she has not opted-in to that action), and therefore it is not required

-11-

to provide information regarding her charge. Maatman Declaration [17-1], Ex. B; Sterling's Opposition [17], p. 4 n. 1.

I disagree. The Mediation Agreement only limited Sterling's obligation to provide additional information "relating to the *Charge*s", not the Charging Parties. Fourth Addendum, ¶8 (emphasis added). At that time, the mediation centered on the then pending 19 charges at issue. Therefore, the limitation in the Mediation Agreement on the EEOC's ability to request information from Sterling does not apply to the Thielker Charge, which was filed approximately six months *after* the mediation concluded.

**CONCLUSION**

For these reasons, I recommend that the EEOC's subpoena be enforced in its entirety.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by November 21, 2011 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 2, 2011

/s/ Jeremiah J. McCarthy<br>
JEREMIAH J. MCCARTHY<br>
United States Magistrate Judge