UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EQUAL EMPLOYMENT OPPORTUNITY            **REPORT AND**
COMMISSION,                             **RECOMMENDATION**

                            Applicant,            11-CV-00938(A)(M)[1]

v.

STERLING JEWELERS INC.,

                            Respondent.
_____

        Before me is the second application of the Equal Employment Opportunity

Commission ("EEOC") for an order to show cause why its administrative subpoena *duces tecum*

to Sterling Jewelers Inc. ("Sterling") should not be enforced [30].[2]  Whereas its first application

sought enforcement of subpoena *duces tecum* #NY-A10-006 ("2010 Subpoena") [1], this

application seeks enforcement of subpoena *duces tecum* #NY-A12-009 ("2012 Subpoena").

Both subpoenas have been issued by the EEOC in connection with its investigation of a charge of

discrimination filed on August 6, 2008 by Diane Thielker, a former employee of Sterling (d/b/a

Jared the Galleria of Jewelry) (the "Thielker Charge").

        This application, being dispositive, has been referred to me by Hon. Richard J.

Arcara for a Report and Recommendation [19].[3]  Oral argument was held on February 6, 2013

_____
        [1]        Although this action was originally commenced under 11-MC-00028, it was converted to
a civil action under 11-CV-00938.

        [2]        Bracketed references are to the CM/ECF docket entries.

        [3]        "A motion to enforce a subpoena is not always considered a dispositive motion for
purposes of Federal Rule of Civil Procedure 72 . . . .  Because the Magistrate's order would dispose of
the entire matter at issue in this case, however, the order is more properly treated as a Report and
Recommendation, subject to de novo review." US EEOC v. Dolgencorp., 2008 WL 4542973, *2 (N.D.Ill.
2008).  *See* EEOC v. Schwan's Home Service, 707 F.Supp.2d 980, 989 (D.Minn. 2010), aff'd, 644 F.3d
742 (8th Cir. 2011) (same).

[39]. For the following reasons, I recommend that the application be granted in part and denied in part.

## BACKGROUND

### A.     The Thielker Charge and Investigation

The Thielker Charge alleges:

"I believe that I have been the victim of unlawful discrimination in employment because of my age . . . , in violation of the Age Discrimination in Employment Act of 1967 . . . and because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964. . . because:

A.  I applied for the timepiece manager position in January 2008 and I was rejected.  Instead a 23 year old male, who did not even apply was hired.

B.  I believe that when I told [the General Manager] that I believed this was age and sex discrimination, he retaliated by saying I did not meet standards and by terminating me." [30-3], pp. 27-28 of 47.

As part of its investigation into the Thielker Charge, on October 9, 2009 Thielker provided the EEOC with a copy of an August 3, 2007 Employee Counseling Report issued by Sterling to Thielker.  The Counseling Report states that "[a]ny discussions regarding payroll need only to be made between said employee + mgr.  Having inappropriate discussions only contribute to and fosters ill will amongst team members as well as *being a direct violation of Sterlings* [*sic*] *code of conduct*." [3], p. 55 of 102 (emphasis added). Included in the Counseling Report are Ms. Thielker's comments that "I feel I'm being discriminated against being a woman in this company where men always make more money than women". Id. at p. 56 of 102.

**B.     The 2010 Subpoena**

On January 20, 2010 the EEOC served Sterling with the 2010 Subpoena,

requesting the following information from January 1, 2005 through present:

> 1.     The Code of Conduct referred to in the Counseling Report
> "and any other policies prohibiting employees from
> discussing their pay";
>
> 2.     "[A]ll disciplinary or warning notices, counseling reports,
> or similar documents reflecting Sterling's enforcement of
> its policy prohibiting employees from discussing their pay";
> and
>
> 3.     [D]ocuments that evidence or explain . . . all individuals
> disciplined under Sterling's policy prohibiting employees
> from discussing their pay".  [3], p. 65 of 102.

The EEOC initially commenced this action by the EEOC on April 11, 2011,

seeking an order compelling Sterling to show cause why the 2010 Subpoena should not be

enforced.  By Report and Recommendation dated November 2, 2011, I recommended that the

2010 Subpoena be enforced in its entirety.  Sterling then moved for clarification of my Report

and Recommendation, and at a November 28, 2011 conference to address that motion, "the

parties agree[d] that Sterling  [would] respond to the . . . [2010 Subpoena] by formalizing its

prior representations that it is not in possession of any responsive documents (other than the

Code of Conduct) because it has no company policy prohibiting employees from discussing their

pay, thereby mooting Sterling's motion for clarification [26] and the parties' need to file

objections to the November 2, 2011 Report and Recommendation". November 29, 2011 Text Order [29].[4]

By letter dated November 30, 2011, Sterling provided the EEOC with a copy of Thielker's executed Statement of Standards of Conduct and Business Ethics dated April 13, 2007 and formalized its representation that Sterling has no policy prohibiting employees from discussing their pay. [30-2], p. 2 of 15.

## C.    The 2012 Subpoena

Thielker has produced to the EEOC over 100 declarations from current and former employees and managers of Sterling countering Sterling's representation that it has no policy prohibiting employees from discussing their pay. Thompson Declaration [30-1], ¶39.[5] According to the EEOC, "[i]n light of this new information, and in an effort to obtain information that would cast light on the truth or falsity of Sterling's representation that it had no policy prohibiting employee pay discussions, the EEOC served Sterling with [the 2012 Subpoena]" (id., ¶40), which seeks the following, from January 1, 2005, to the present:

> "1. For each person who signed the August 2007 Employee Counseling Report concerning Diane Thielker, provide documents or [electronically stored information ("ESI")] including: name; home address; home telephone number; cell phone number; business phone number; business address; email

---

[4]    At that conference and in its subsequent submissions, Sterling has explained that the supervisor who authored Thielker's Counseling Report "made a mistake and assumed that there was such a policy". Unofficial chamber's transcription of the November 28, 2011 conference. *See also* [30-4], p. 19 of 26 ("that suggestion was a mistake").

[5]    These declarations have been produced for my *in camera* review, without prejudice to Sterling's right to seek disclosure of these declarations. February 6, 2013 Text Order [39].

addresses; job title as of August 2007; current job title; and whether currently employed at Sterling and if not, date of termination;

2. Provide all versions of Sterling's code of conduct that Sterling has distributed to its employees, managers, or supervisors;

3. Provide all documents and ESI interpreting, clarifying, or explaining the code of conduct;

4. Provide all documents and ESI concerning any training addressing the code of conduct;

5. Provide all documents and ESI setting forth or describing disciplinary policies at Sterling;

6. Provide all documents and ESI concerning any training addressing disciplinary policies at Sterling;

7. Provide all documents and ESI setting forth or describing confidentiality policies at Sterling;

8. Provide all documents and ESI concerning any training addressing confidentiality policies at Sterling;

9. Provide all documents and ESI reflecting communications between Sterling and its employees concerning employee discussions or disclosures of compensation at Sterling ('compensation' includes, but is not limited to, pay, salaries, wages, benefits, commissions, and monetary awards), including any communications discouraging employees from discussing compensation or informing managers or supervisors that they should discourage employees from discussing compensation with anyone other than a member of management;

10. Provide all documents and ESI concerning any employee discipline, counseling, or coaching relating to employee discussions or disclosures of any matters concerning compensation, including any counseling report or other document reflecting that an employee was disciplined, counseled, or coached for discussing compensation;

11. For each employee disciplined, counseled, or coached for any reason relating to employee discussions or disclosures of any matters concerning compensation, provide that employee's complete personnel file including all ESI;

12. Provide a complete personnel file for Diane Thielker, including all ESI concerning her;

13. For each person who has been disciplined, counseled, or coached for discussing or disclosing any matters concerning compensation, provide documents or ESI including: name; home address; home telephone number; cell phone number; business phone number; business address; email addresses; current or most recent job title; date and copy of discipline or counseling; and whether currently employed at Sterling and if not, date of termination;

14. For each person who has been disciplined for violating the code of conduct, provide documents or ESI including: name; home address; home telephone number; cell phone number; business phone number; business address; email addresses; current or most recent job title; date and details of discipline; and whether currently employed at Sterling and if not, date of termination;

15. Provide all documents and ESI addressing how disciplinary or counseling actions are tracked or coded in any database or other system at Sterling". [30-2], pp. 13-15 of 15.

In March 2012 Sterling filed a petition with the EEOC to revoke or modify the 2012 Subpoena [30-3].  On September 10, 2012 the EEOC denied its petition.  [30-4], pp. 2-16 of 26.  Although Sterling has since produced some documents, it has refused to provide all of the responsive information requested by the 2012 Subpoena (Thompson Declaration [30-1], ¶¶43-45), prompting this motion.


C.    **Litigation Against Sterling**

Before it began its investigation into the Thielker Charge, the EEOC commenced an action entitled EEOC v. Sterling Jewelers Inc., 08-CV-00706(A)(M) (W.D.N.Y.) on September 23, 2008,  alleging that "since at least January 1, 2003, Sterling has engaged in unlawful employment practices throughout its stores nationwide . . . by maintaining a system for making promotion and compensation decisions that is excessively subjective and through which

Sterling has permitted or encouraged managers to deny female employees equal access to promotion opportunities and the same compensation paid to similarly situated male employees" ([34-2], ¶7(a)), and by "maintain[ing] a system for making promotion and compensation decisions that is excessively subjective and that has a disparate impact on female retail sales employees".  Id., ¶8(a).

An arbitration is also pending against Sterling (Jock v. Sterling Jewelers Inc., AAA Case No. 11 160 00655 08), which alleges similar gender discrimination with respect to compensation and promotions. First Amended Class Arbitration Complaint [34-1].   The arbitration claimants  also allege that Sterling has a policy prohibiting employees discussing their wages. *See, e.g.*, id., ¶¶73, 83, 96.[6]

## ANALYSIS

"A charge of discrimination merely allows the EEOC to begin an investigation", the purpose of which "is to determine whether probable cause or reasonable cause to bring a discrimination charge exists."  EEOC v. K-Mart Corp., 694 F.2d 1055, 1063 n. 7 (6th Cir. 1982). "[T]he district court's 'role in a proceeding to enforce an administrative subpoena is extremely limited.'" EEOC v. United Parcel Service, Inc., 587 F.3d 136, 139 (2d Cir. 2009).  "[T]he Court's role . . . is not to assess the strength of the discrimination charge that the EEOC is

---

[6]         Thielker is not a named claimant in the arbitration, nor is she among the 19 charging parties identified in the EEOC's Complaint in EEOC v. Sterling Jewelers Inc.  Sterling's Memorandum of Law [33], p. 4.

investigating." <u>EEOC v. St. John Hospital & Medical Center</u>, 2012 WL 3887626, *5

(E.D.Mich.), <u>adopted</u> 2012 WL 3888072 (E.D. Mich. 2012).

"To obtain enforcement of an administrative subpoena, '[a]n agency must show

only [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the

inquiry may be relevant to the purpose, [3] that the information sought is not already within [the

agency's] possession, and [4] that the administrative steps required . . . have been followed.'"

<u>EEOC v. United Parcel Service, Inc.</u>, 587 F.3d at 139. "A subpoena that satisfies these criteria

will be enforced unless the party opposing enforcement demonstrates that the subpoena is

unreasonable or that compliance would be 'unnecessarily burdensome.'" <u>Id</u>.


**A.     Requests 1-2, 5, 7, and 12**

In connection with its response to the EEOC's motion, Sterling supplemented its

production on January 16, 2013, and "confirms that it has conducted a reasonable search for

documents that are responsive to requests 1-2, 5, 7, and 12, and that it has now produced all

responsive documents located through that search."  Sterling's Memorandum of Law [33], p. 8,

n. 4.  The EEOC disputes whether Sterling's production satisfies its obligations with respect to

these requests, arguing that: 1) "[w]ith respect to Question 2, Sterling has produced several

Codes of Conduct from 2004-2010 and 2012. To the extent that a Code of Conduct exists for

2011, Sterling has not produced it.";  2) "[w]ith respect to Questions 5, 7, and 12, Sterling has

not confirmed that it has produced all responsive documents or what questions the documents it

did produce are responsive to."; and 3) "Sterling  has . . . not produced the [ESI] requested in the

2012 Subpoena." Thompson Declaration [37-1], ¶11.

At this point, I have no reason to doubt Sterling's representation that it has produced all responsive documents to Requests 1-2, 5, 7, and 12. *See* <u>United States v. Johns</u>, 336 F.Supp.2d 411, 424 (M.D.Pa. 2004) ("The court is entitled to rely on the representations of counsel, as officers of the court"); <u>Theodore v. State of New Hampshire</u>, 614 F.2d 817, 822 (1st Cir. 1980) ("Attorneys are officers of the court and a judge has the right, in most circumstances, to rely on their representations to him"). However, to resolve any ambiguity as to whether Sterling's search and production included ESI, I recommend that Sterling confirm whether its search for responsive information to Requests 1, 5, 7, and 12, included a search of its ESI. If it has not undertaken such a search, it shall do so and provide responsive ESI (if any) to the EEOC. For the documents produced in response to Requests 5, 7, and 12, I also recommend that Sterling identify which documents were produced in response to each request.

**B.    Requests 3, 4, 6, 8-11, and 13-15**

In opposing enforcement of the balance of the 2012 Subpoena, Sterling argues that it seeks the same information as sought in the 2010 Subpoena, seeks information that is not relevant to the Thielker Charge, is not seeking this information for a legitimate purpose, and that compliance would be unduly burdensome.[7] I will address each of these arguments separately.

---

[7]    Sterling also alleges that the EEOC failed to comply with its own pre-subpoena procedures set forth in its Compliance Manual. Sterling's Memorandum of Law [33], p. 6 n. 3. However, it does not argue that this constitutes a ground for rendering the 2012 Subpoena unenforceable.

**1.      Does the 2012 Subpoena Seek the Same Documents as the 2010 Subpoena?**

Sterling argues that since "[s]ome parts of the EEOC's new administrative

subpoena seek the same documents as the old subpoena", the 2012 Subpoena should be

"resolve[d] by extending the November 29, 2011 order".  Sterling's Memorandum of Law [33],

pp. 8-10.  I disagree.

At the November 28, 2011 conference, the EEOC made clear that its agreement

to resolve its enforcement of the 2010 Subpoena would not necessarily conclude its investigation,

stating that "if it turns out that Sterling's representations to the court have been false . . . then we

would . . continue our investigation".[8]  I also stated that "if it turns out that there was a policy

then that is a whole different ball game." Indeed, "[t]extually neither Title VII nor the EEOC's

regulations set a bright-line point at which an investigation must end, in fact the regulations

reserve the authority to continue to investigate a charge after a reasonable cause determination

has been made or the charging party has been issued a right to sue letter." EEOC v. Von Maur,

Inc., 2007 WL 3503435, *4 (S.D.Iowa 2007).

The EEOC having since learned from Thielker of ample evidence casting doubt

on Sterling's representation that it has no policy prohibiting employees from discussing their pay,

the information it now seeks through the 2012 Subpoena is intended to "cast light on the truth or

falsity of Sterling's representation that it had no policy prohibiting pay discussions".  Thompson

Declaration [30-1], ¶40.  Unlike the 2010 Subpoena, which only sought the existence of a policy

---

[8]      All  quotations from the November 28, 2011 proceeding are from the unofficial
chambers transcription.

prohibiting employees from discussing their pay and any discipline arising from violations of that policy, the 2012 Subpoena is not so limited.

As I indicated at the November 28, 2011 proceeding, even without an intentional policy, "if it were to be determined that . . . employees have been disciplined for discussing . . . pay with other employees, then that might become a policy". The 2012 Subpoena seeks just that, requesting disclosure of employee discipline for discussing compensation, regardless of whether this discipline occurred pursuant to a formalized policy.

### 2.    Does the Subpoena Request Relevant Information?

"In connection with any investigation of a charge . . . the Commission . . . shall at all reasonable times have access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42 U.S.C. §2000e-8(a). The "limitation on the Commission's investigative authority is not especially constraining . . . . [C]ourts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." EEOC v. Shell Oil Co., 466 U.S. 54, 68-69 (1984).

"The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom . . . . The charge merely provides the EEOC with 'a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices;' and that investigation may well 'disclose . . . illegal practices other than those listed in the charge'". EEOC v. General Electric Co., 532 F.2d 359, 364 (4th Cir. 1976). See EEOC v.

Astra U.S.A., Inc., 94 F.3d 738, 746 (1st Cir. 1996) ("[T]he charge is capable of supporting an

EEOC investigation into both the discrimination described in the charge itself and into the

surrounding circumstances (including a full probing of any evidence of discriminatory practices

unearthed during the course of the initial investigation)").

Although not expressly part of the gender and race discrimination allegations set

forth in the Thielker Charge, in the course of investigating that charge, Thielker produced the

Counseling Report alerting the EEOC to her belief that she was "being discriminated against

being a woman in this company where men always make more money than women". [3], p. 56

of 102. "Once the EEOC begins an investigation, it is not required to ignore facts that support

additional claims of discrimination if it uncovers such evidence during the course of a reasonable

investigation of the charge." EEOC v. Kronos Inc., 620 F.3d 287, 297 (3d Cir. 2010). "[T]he

EEOC has the power to investigate a 'a broader picture of discrimination which unfolds in the

course of a reasonable investigation of a specific charge'" Id. (quoting EEOC v. Cambridge Tile

Manufacturing Co., 590 F.2d 205, 206 (6th Cir. 1979)).

The Counseling Report also disclosed the existence of a possible policy at Sterling

prohibiting the discussion of pay between employees. Any formal or informal company-wide

policy prohibiting Sterling's employees from discussing their pay is relevant insofar as it may be

used to mask the alleged discrimination. Thus, the pay-discussion information sought in the

2012 Subpoena is relevant. [9] See EEOC v. United Parcel Service, Inc., 587 F.3d at 139-40

_____

[9]     Sterling's reliance on EEOC v. McLane Company, Inc., 2012 U.S. Dist. LEXIS 164920,
*13-15 (D. Ariz. 2012) (finding no relevance to a request for pedigree information for those who took an
employer's physical exam that allegedly represented a tool of gender discrimination)  and EEOC v.
Nestle Prepared Foods, 2012 WL 1888130, *3 (E.D.Ky. 2012) (declining attempt to conduct a company-
wide investigation based upon a single isolated act of discrimination) do not compel a different result.

(enforcing a subpoena for nationwide information related to a company-wide policy that emanated from two individual charges of discrimination); EEOC v. Kronos Inc., 620 F.3d at 298 ("An employer's nationwide use of a practice under investigation supports a subpoena for nationwide data on that practice"). Therefore, for these reasons and those set forth in my November 2, 2011 Report and Recommendation ([23], pp. 7-9), I conclude that the EEOC has met its burden of establishing that the pay-discussion information which it seeks is relevant to its investigation.

However, the 2012 Subpoena is not limited to information concerning pay discussions. As noted by Sterling, Request Nos. 3 and 4 seek *any* information clarifying the code of conduct and training concerning the code of conduct; Request Nos. 6 and 8 address *any* training concerning Sterling's disciplinary and confidentiality policies; Request No. 14 seeks information concerning discipline for *any* violation of the code of conduct; and Request No. 15 seeks information concerning how *all* disciplinary or counseling actions are tracked or coded. Sterling's Memorandum of Law [33], pp. 12-14.

The EEOC admits that its "broadly worded 2012 Subpoena might necessarily capture some less-relevant documents – e.g., discipline records from individuals who violated the code of conduct by accepting personal loans from vendors". EEOC's Reply Memorandum of Law [37], p. 4. However, it argues that "Sterling can object to those requests to the extent it genuinely believes that the requests would capture clearly irrelevant documents. But any such good-faith objections would not absolve Sterling of its responsibility to respond to the EEOC's requests by providing relevant pay-discussion documents." Id.

Sterling has objected to the relevance of these requests. "While the notions of relevancy in an EEOC investigation are broad, they are not limitless." EEOC v. Local 32B-32J, Service Employees International Union, AFL-CIO, 1992 WL 84474, *2 (S.D.N.Y. 1992). *See* EEOC v. Shell Oil Co., 466 U.S. at 69 ("Congress did not eliminate the relevance requirement, and we must be careful not to construe the regulation adopted by the EEOC governing what goes into a charge in a fashion that renders that requirement a nullity"); EEOC v. K-Mart Corp., 694 F.2d at 1066 ("[T]he subpoena cannot be so broadly stated as to constitute a 'fishing expedition'"). Thus, where necessary, "courts have pared down EEOC subpoenas as a condition of enforcement." Id.

According to the EEOC, the information sought in the 2012 Subpoena is relevant to "shed[ding] light on Sterling's policy against discussing pay". EEOC's Memorandum of Law [30-5], p. 16. *See* Thompson Declaration [37-1], ¶8 (the 2012 Subpoena was issued "to request pay-discussion documents"). However, Requests 3, 4, 6, 8, 14, and 15 seek information that goes far beyond that inquiry. Although the EEOC characterizes violations of the code of conduct such as "accepting personal loans from vendors" as being "*less*-relevant", I have difficulty discerning *any* relevance which such violations might have to the Thielker Charge, much less to Sterling's alleged prohibition against employees discussing their pay.

Since these requests, as drafted, are not sufficiently tailored to their self-described purpose of obtaining pay-discussion documents, I recommend that the scope of these requests be narrowed to documents and ESI concerning employee disclosures of compensation at Sterling. For example Request 3, as narrowed, would seek "all documents and ESI interpreting, clarifying

or explaining the code of conduct *to the extent it concerns employee disclosures of compensation at Sterling*."

### 3. Is the Subpoena being Issued for a Legitimate Purpose?

Sterling concedes that "[u]nder appropriate circumstances, an EEOC action against an employer with respect to a given practice would not for instance, bar the EEOC from investigating a related charge against the same employer with respect to the same practice." Sterling's Memorandum of Law [33], p. 15. Nonetheless, it argues that the 2012 Subpoena is improper since "Thielker's charge does not address compensation", an issue that is "front and center in the EEOC's separate action against Sterling in this Court and a parallel arbitration against Sterling". Id., p. 2. Thus, Sterling argues that "the EEOC is attempting to use the charge as the vehicle for gathering company-wide compensation-related information for its collateral action (and parallel arbitration) by serving a subpoena that is not subject to the rules and protections that would apply to a discovery request". Id. I disagree.

As discussed above, the information which the EEOC seeks in the 2012 Subpoena arises from and is plainly relevant to the Thielker Charge. The fact that the information sought may also be relevant to the issues in the other pending litigation does not render the purpose of the subpoena improper. Therefore, for these reasons and those set forth in my November 2, 2011 Report and Recommendation ([23], pp. 5-6), I conclude that the EEOC has met its burden of establishing that the 2012 Subpoena was issued for a legitimate purpose.

**4.    Would Compliance with the Subpoena Place an Undue Burden on Sterling?**

"[A] court may modify or exclude portions of a subpoena only if the employer 'carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad'" by demonstrating that "'compliance would threaten the normal operation of a respondent's business.'"  EEOC v. United Air Lines, Inc., 287 F.3d 643, 653 (7th Cir. 2002).  *See* EEOC v. Pan American World Airways, 1983 WL 482, *4  (S.D.N.Y. 1983).   This burden "is not easily met".  EEOC v. Maryland Cup Corp., 785 F.2d 471, 477 (4th Cir.), cert. denied, 479 U.S. 815 (1986).

In support of this showing, Sterling asserts that it has employed "in excess of approximately 57,000 individuals in retail sales positions around the country, including in excess of 48,000 individuals in full-time or part-time sales positions."  Lynch Declaration [35], ¶10. Since it did "not code its personnel records to identify whether a Sterling  employee has received any discipline, warning, counseling or  other communication about any discussions that employee may have had with other employees about his or her compensation", the personnel records would need to be manually reviewed to respond to the subpoena.  Id., ¶9.  Lacking the internal resources to perform such a review, Sterling has obtained a preliminary estimate from a vendor that it would cost $164,875 "to review 45,000 personnel files . . . and produce any responsive documents".  Id., ¶13.  This estimate does not account for the costs of retrieving the personnel files from offsite storage or the redaction of personal information before production.  Id. ¶14.

The EEOC attempts to cast doubt on Sterling's allegations of burden by relying, *inter alia*, on Sterling's Counseling and Performance Management Policy [37-2], which states that "[t]he supervisor/manager should retain a copy of written counseling reports for their records in a

secure file". Id., p. 11 of 14. It argues that "[w]ith counseling reports already segregated, Sterling's burden . . . would be to scan this file at each store." EEOC's Reply Memorandum of Law [37], p. 6.

In any event, even accepting Sterling's allegations as true, it has not met its "difficult burden" of establishing that compliance with the subpoena would threaten its normal business operations. In assessing the burdensomeness of a subpoena the Court must show "'that the cost of gathering this information is unduly burdensome *in light of the company's normal operating costs*.'" EEOC v. Morgan Stanley & Co., Inc., 132 F.Supp.2d 146, 161 (S.D.N.Y. 2000) (emphasis added) (*quoting* EEOC v. Maryland Cup Corp., 785 F.2d at 479). *See* EEOC v. Randstad, 685 F.3d 433, 451 (4th Cir. 2012) ("Although '[w]hat is unduly burdensome depends on the particular facts of each case and no hard and fast rule can be applied to resolve the question,' . . . an important factor is the cost of production 'in the light of the company's normal operating costs'").

While Sterling's cost estimate for complying with the 2012 Subpoena is substantial, it fails to identify how this cost would present an undue burden for a retailer of its size. *See* US EEOC v. Aaron Bros. Inc., 620 F.Supp.2d 1102, 1108 (C.D.Cal. 2009) (finding that respondent failed to meet its burden of establishing undue burden where it failed to produce, *inter alia*, "evidence of the size of their operations and their capacity to handle the costs"); EEOC v. Maryland Cup Corp., 785 F.2d at 479 (where estimated cost to comply with subpoena was $75,000, defendant did not show that this cost was unduly burdensome in the light of its normal operating costs). Sterling, which characterizes itself as "the largest specialty retail jeweler in the United States" (Sterling's Memorandum of Law [33], p. 3), offers no estimates of its ordinary

operating costs, revenue, or sales, nor does it make any attempt to counter the EEOC's allegations that in fiscal year 2012 its parent company reported over $500 million in net operating costs, $300 million in after-tax income, and $3.7 billion in sales. EEOC's Reply Memorandum of Law [37], pp. 7-8.

Sterling has also not demonstrated that compliance with the subpoena would threaten its normal business operations. In fact, it contemplates the review and production being accomplished by an outside vendor. Lynch Declaration [35], ¶13.

Without citing to any authority, Sterling further argues that "the subpoena could potentially subject [it] to liability for violating the privacy rights of its employees." Sterling's Memorandum of Law [33], p. 18. However, "Congress has considered the issue of confidentiality and provided protection to employers by subjecting EEOC employees to criminal penalties for making public any information obtained by the EEOC pursuant to its authority." EEOC v. Township of Howell, 1991 WL 160350, *2 (D.N.J. 1991) (*citing* University of Pennsylvania v. EEOC, 493 U.S. 182, 110 S.Ct. 577, 584 (1990)). *See* EEOC v. St. John Hospital & Medical Center, 2012 WL 3887626 at *9 ("The Hospital objects to producing its current and former employees' addresses, phone numbers and medical conditions on the ground that it would violate the employees' rights to privacy. As argued by the EEOC, however, 'confidentiality is no excuse for noncompliance since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination'").[10]

---

[10] Unlike in EEOC v. Farmer's Pride, Inc., 2012 WL 5363145, *7 (E.D.Pa.), order entered, 2012 WL 5363777 (E.D.Pa. 2012), Sterling has not requested implementation of a confidentiality order. Instead, it appears to contemplate possible redaction of any confidential and personal information it produces to the EEOC. Sterling's Memorandum of Law [33], p. 18.

For these reasons, I conclude that Sterling has not established that compliance with the 2012 Subpoena would constitute an undue burden.

## C.     The EEOC's Request for Costs

Without citing to any authority, the EEOC seeks its costs in connection with its motion. EEOC's Application [30], p. 1 of 2, Wherefore Clause, ¶(c). Since I have agreed with some of Sterling's objections and it has attempted to comply with portions of the 2012 Subpoena, I recommend that the EEOC's request for costs be denied. *See* <u>EEOC v. Farmer's Pride, Inc.</u>, 2012 WL 5363145 at *10 (denying the EEOC's request for costs where "[r]espondent's objections [to the subpoena] were made in good faith and have some support in the case law" and "[r]espondent . . . made significant efforts to comply with the EEOC's investigation").

**CONCLUSION**

For these reasons, I recommend that the EEOC's application [30] be granted to the extent that the 2012 Subpoena be enforced as follows:

- - Requests 1, 5, 7, and 12 be enforced to the extent of requiring Sterling to confirm in writing whether its search for responsive information included a search of its ESI, and if it has not undertaken such a search, that it do so; and for the documents produced thus far in response to Requests 5, 7, and 12 that Sterling identify which documents were produced in response to each request;

- - Requests 3, 4, 6, 8, 14, and 15 be enforced, as narrowed, to seeking only documents and ESI concerning employee disclosures of compensation; and

- - Requests 9, 10, 11, and 13 be enforced in their entirety; and that the remaining aspects of the EEOC's application, including its request for costs, be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by October 10, 2013 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: September 23, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge